## Hathaway v. Hines

*Michael S. JanJanin,* for plaintiff.
*William C. Sacco,* for defendant.

PFADT, *P.J.,* July 22, 1985—Plaintiff, Audrey J. Hathaway, filed a complaint for support of Kizzy

Hathaway on December 14, 1984 against defendant, Robert L. Hines. Defendant had acknowledged paternity of the child back in 1980 and, in effect, seeks to relitigate the issue of paternity.

The undisputed facts giving rise to this controversy are as follows. Plaintiff and defendant resided together, without benefit of marriage, from 1976 to 1984. During this period of cohabitation, plaintiff had two children: Kizzy Nicole Hathaway, born on March 28, 1977, and Shaherha Khaliha Hines, born on September 8, 1979. Defendant signed hospital papers admitting he was the father of both children.

On February 8, 1980, plaintiff filed an action for support against defendant, seeking support for both Kizzy and Shaherha. On March 25, 1980, defendant signed an "Acknowledgment of Paternity for a Child Born Out-of-Wedlock," and was a party to an "Agreement for Order of Support" entered that same day. Defendant paid support for both children under this order until January 5, 1982 when the order was discontinued at the request of both parties. Defendant continued to pay support for the children by private agreement until December, 1984.

On March 9, 1984, defendant discovered certain evidence leading him to believe that he was not, in all probability, the natural father of Kizzy Hathaway. Defendant discontinued support payments for Kizzy in December, 1984, resulting in the filing of the present action. Following blood tests, it was determined conclusively that defendant was not the natural father of Kizzy.

Despite the evidence that defendant could not be Kizzy's biological father, the issue to be determined is whether defendant is precluded from disclaiming paternity now, some seven years following the birth of the child and after establishing a parent-child re-

lationship. Plaintiff asserts that defendant is estopped from denying paternity at this late date. Defendant, meanwhile, relies on certain dicta in Commonwealth ex rel Gonzalez v. Andreas, 245 Pa. Super. 307, 369 A.2d 416 (1976), arguing that plaintiff's "fraud" in concealing the real father is a "vitiating factor to the application of the doctorine [sic] of equitable estoppel." Defendant's brief, p.3.

The court in Gonzalez states that:

"Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when, in doing so, the innocent child would be victimized." Gonzalez, supra, at 419. Here, defendant claims that plaintiff knew who the real father of the child was, but told defendant that he was the father, and nothing led him to believe otherwise until March 9, 1984. We agree, in part, with Judge Spaeth's concurring opinion in Gonzalez that in situations like this, plaintiff is in a position to know better than defendant "who was, or at least who might be, the father of the child." Gonzalez, supra, at 421. However, we are not about to reward or to punish plaintiff for any possible deceit on her part, we are simply deciding whether the child should continue to receive support from the only father she has ever known. While the equities may appear compelling in favor of defendant, we do not believe that they override the interests of the child in this case.

In addition, since defendant never appealed from the original support order:

"the fact of defendant's paternity . . . became established as a matter of law. A relevant fact necessarily determined as a prerequisite to the entry of an original support order may not, under the doctrine

of res judicata, be challenged or put at issue in any subsequent proceeding." Commonwealth ex rel Nedzwecky v. Nedzwecky, 203 Pa. Super. 179, 182, 199 A.2d 490, 491 (1964). Whether we call it res judicata or collateral estoppel, the fact remains that defendant has lost his chance to deny paternity.

It is true that the Uniform Act on Blood Tests to Determine Paternity, 42 Pa. C.S. §6131 et seq., is slient on the time period in which a putative father must commence suit to deny paternity. However, we believe that, for the sake of the child, suit must be brought within a reasonable time. Furthermore, we believe that the Uniform Parentage Act, 9A U.S.A. §6(a)(2), now the law in 15 states, sets forth an appropriate guideline:

". . . a child, his natural mother, or a man presumed to be his father may bring an action . . . for the purpose of declaring the non-existence of the father and child relationship only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than [five] years after the child's birth." No matter what the circumstances were surrounding defendant's admitting paternity seven years ago, he is the child's father as a matter of law, if not biology, and is estopped from denying paternity at this late hour.

## ORDER

And now, July 22, 1985, for the reasons stated in the above opinion, we hereby order, direct and decree that defendant is obligated to support Kizzy Nicole Hathaway as if she were his own natural child. It is further ordered that the $64.64 weekly support obligation for both Kizzy and Shaherha be made payable retroactive to December 14, 1984. Costs to be divided equally between the parties.